Catkon, J.
delivered the opinion of the court. The defendant was a constable of Williamson county, who had been indicted for extortion; and at the July term, 1824, the cause came on for trial, and he was convicted, and judgment given by the county court, that said Fields be removed from office, and fined ten dollars; from which judgment he appealed to the circuit court. The solicitor for the state then moved the court, that pending the prosecution in the courts above, Fields should be suspended from exercising the office of constable. Upon this motion, the court set forth, “that they are the same justices who sat upon the trial of the indictment against Fields, for oppressively taking out an execution, and for extortion, by collecting money and receiving fees, by color of the same, of one D. Knight, at the instance of J oseph Taylor, and who pronounced judgment that said Fields be removed from office, and fined ten dollars ; from which judgment an appeal was taken to the circuit court; and all the abovementioned facts and circumstances being known to the court, it is ordered by the court, that the said Nelson Fields be suspended and deprived of the privilege of exercising the office of constable, for said county of Williamson, until the said cause shall be finally determined and ended in the courts above.” From this order of the county court, Fields prayed an appeal, which the court refused to grant; to which refusal, Fields filed his bill of exception. He then filed his petition with the circuit *169 judge, for a writ of certiorari, to briiig the cause to the circuit court, which writ was granted him. r At the August term, 1824, of the circuit court of W illianason county, it was adjudged, “that the order of .the countó court, removing the defendant from his office of constable, be set aside, and that said Nelson Fields be restored' to his said office of constable; from which the solicitor prayed an appeal, in the nature of a writ of error, to this court. .
Upon this statement of facts, the counsel for the defendant, Fields, contend, that the attorney for the state had no right to his writ of error on behalf of the government,' because this is a criminal cause; to which it is a sufficient answer to say, that this is not a criminal proceeding, affecting the person of the defendant; that it merely goes to deprive him of a franchise, granted to him by the same power who now claims the right to take it away for a misuser, and the state and the defendant have equal rights to a writ of error. That the defendant had the right, is clear. This is settled by the case of Sevier vs. the justices of Washington county, Peck’s Rep. 334; see act of 1811, ch. 72, sec. 11. And by the act of 1794, ch. 1, sec. 45, it is made the duty of the solicitor to appeal, if he thinks the state has been injured.
But the main question is, had the county court the power to remove or suspend the constable? To ascertain this, we are compelled to resort to the common law, there being no statute that applies to such a case. The .English courts of quarter sessions in this respect, have had, and exercised a jurisdiction similar to our courts of pleas and quarter sessions; and to the practice of those courts we are compelled to resort, to ascertain the common law upon this subject. Sergeant Hawkins, in his Pleas of the Crown, vol. 2, p. 99, sec. 38, says, “that the sheriff or steward, having power to place a constable in his office, has hy consequence a power of removing him.” On the same principle that' those who appoint, have authority to remove, have the justices of the peace, time out of mind in England, both appointed, and, for good cause, removed constables. (2 Hawk. 103, sec. 49.) Burns, in his Justice of the Peace, explains the above general authority, and states the practice to be, that a consta?- *170 ble must be removed by a majority of tbe justices of tbe or by the sessions of the peace. (1 Burns’ Justice 308.) Hence it is clear law in England, that the sessions have power to displace a constable for good cause; but what such good cause is, cannot be very clearly ascertained. Any abuses that bring disgrace upon the justice of the country, were considered sufficient. Extortion has ever been deemed as most criminal and disgraceful; and officers, guilty thereof, no doubt removable. (Stat. West. 1, ch. 26; 2 Inst. 209; 5 Ba. Abr. 213.) Suppose a constable had been convicted of petty larceny, in the county court, of which county he was constable, and the facts had been undoubtedly proved against him, from which conviction he appealed to the circuit court; would it not have been the duty of the county court, who heard the cause, to have removed or suspended him during the pendency of the cause, by his appeal? By change of venue, and writs of error, the criminal could easily have kept off the punishment for two years, and by this means put himself above the law, if the county court had not the power of removal. The conviction, when produced, would only be evidence of the fact alleged in the bill of indictment; and these facts, the court have for this purpose as much right to inquire into, as the jury; which will be presently seen. The convicted felon is an unfit person to be the officer of a court. (Brownshall’s case, Cow. 829; King vs. Southerton, 6 East, 142.) The principle that will justify extortion, will sanction theft; and the constable aggravates his crime by perjury in fact, i-h violating his oath. 2 Inst. 209. The ceremony of dismissing a constable and setting him in the pillory, would have been a light matter in the days of lord Coke, had the court of sessions adjudged that he was guilty of extortion. Yet in this country, it would most probably be unconstitutional, to inflict punishment upon the person of the offender, otherwise than by a conviction upon presentment or indictment. But the removal from office, being a civil proceeding, not affecting the person, and no bar to an indictment for the same offence, the finding of a jury is not necessary to authorize the court to remove. If an officer of the court abuses tbe *171 process thereof, the court has power to attach him, punish by imprisonment for the contempt, and this is no bar to an indictment for the same offence. 2 Hawk. 216 to 219; 4 Com. 287, 8; King vs. Elkins, 1 Wm. Bl. Rep. 640; King vs. Jane Horsley, 5 Term. Rep. 362; Hugginson’s case, 2 Atk. 469; Yeates vs. Lansing, 9 John. 417; Constitution of Tennessee, art. 4, sec. 4.
Officers of courts stand upon the same footing, and therefore the precedents made, in reference to attorneys in England, are every way as conclusive, as if the judgments had been given directly against constables; other than that, the attorney stands upon much higher ground than the constable. If an attorney has been convicted of a crime, he is deemed a person unfit for the office, a*d is stricken from the roll, (Brownshall’s case, Cowp. 829,) and was commonly sworn in former times never again to practise in any of the king’s courts. (2 Inst. 214; 4 Inst. 101; 2 Inst. 212; Jerome’s case, Cro. Car. 74.) Or if an attorney has been guilty of conduct corrupt in the estimation of the court, he will be stricken from the roll as above, although it does not in law amount to an indictable offence. (King vs. Southerton, 6 East 142; 1 Com. Dig. 630; 2 Hawk. 219.) These authorities fully establish the powers of the courts to inquire, upon evidence, in a summary way, into the conduct of its officers, and to remove them, in certain cases, if they are thought unfit for the station. I would here remark, that the duty of the attorney in England, differs, in many respects, from those of our attorneys, who are counsellors also. ’ They are hoL den to be peculiarly the officers of the court, and subject to its control. (1 Com. Dig. 630; 3 Term. Rep. 275; 1 Burr. 20; 1 Stra. 621; 2 Burr. 792; 1 Salk. 87; 1 Burr. 298; 1 Atk. 139; Gwyn vs. Kerly, Strange 402.) Having no reports of the proceedings of the inferior courts in England, resortmust be had to the rules imposed upon higher and other officers, acting in the superior courts, who have power, partly discretionary over all their officers; (2 Hawk. 219, sec. 12,) and this, from necessity; for, without it, they could not possibly exist.
The English'courts of quarter sessions' having the power to remove constables, what power have our courts of pleas *172 and quarter sessions? By the act of 1715, ch. 31, sec. 6, the common law of England is declared to be in force in the colony of North Carolina. The act of 1778, ch. 5, sec. 1, declares that the English common law, and statutes of England, then in force and use, should continue to be in force and use, unless inconsistent with the freedom of the form of government. The constitution of the state of Tennessee, ar. 10, sec. 3, provides, that “all laws then (1796) in force^ not inconsistent with the constitution, should continue in force, until altered or repealed.”
By the constitution, ar. 6, sec. 1, the county courts are given power to appoint constables; this clause in the constitution recognizes the act of 1741, ch. 5, sec. 3; by virtue of which, constables were appointed before the formation of the constitution. This act creates the same relation between the constables of this state and the county court, which existed between that officer, and the courts of sessions in England. The third section of the act of 1741, is in these words: “That each and every constable so appointed, nominated and sworn, is, and they are hereby invested with, and may execute the same power and authority, to all intents and purposes, as the constables within the kingdom of England are by law invested with, and execute.” It is from this statute that the constables derive all their powers, and by which they are put upon the footing of constables in England, are governed by the common law, and subject to the control of the county court, for refusing to do their duty w'hen precepts are directed to them by a justice of the peace, as will be seen by the 8th section of said act. Before our revolution, there can be no doubt, that all the common law rules applied to constables, and that the county courts having the power to appoint, had the power to remove, to the same extent the courts of quarter sessions of England had at the time of the passage of the act of 1741.
Has the constitution of the United States, or of this state, abridged the powers of the county court in this respect? As the provisions in the two instruments referred to, are the same in substance, I will only examine the constitution of the state of Tennessee, and inquire whether the funda *173 mental and paramount law, there laid down, is violated by this exercise of power in the county courts. The 8th section of the 11th article of the constitution, provides, “that no free man shall be taken, or imprisoned, or disseised of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of life, liberty or property, but by the judgment of his peers, or the law of the land.” It is contended, on the part of the defendant, that by this section of the constitution, he was entitled to the judgment of his peers f before he could be deprived of his privilege of constable, because he was proceeded against for a misdemeanor in office. This doctrine will not bear the test of examination, even by the most visionary theorist, much less when applied to the practical concerns of life, by lawyers and men administering the government, necessarily by acts, and not words. Suppose the constable was convicted of forgery, bribery, or felony of any kind, would the circuit court, who rendered the judgment upon the conviction, be authorized to remove him? Where is the statute or common law to be found, that gives the power to render such judgment? No one will pretend that it exists. The constable is, and for centuries has been, recognized as an officer of the county or sessions court; and he is removable, for this reason, by that court, upon evidence, legal in its character, that proves to their satisfaction, that he is corrupt, and unfit to fill the appointment. All the rights enumerated in this section of the constitution, it is contended, must be taken from a free man by the judgment of his peers. Let us examine if this is the true construction. No free man shall be taken or imprisoned, but by the judgment of his peers — if so, the man guilty of murder, and every other crime, could not be apprehended — peace warrants could not issue — bail, in civil cases, could not be taken — the mob who despoiled the sanctuaries of religion and justice, could not be arrested in its ravages — a contempt could not be punished, although the offender dragged the judge from his ■seat. Secondly, “no free man shall be disseised of his liberties or privileges, or his property,” but by what? the judgment of his peers? Certainly not, for this would destroy all *174 the powers of the courts of chan eery, which every day deprive men^ jjy pr0cess, of their privileges, liberties and property, and disseise them of their freeholds, and yet act within the pale of the constitution; because justice is administered according uto the law of the land.'1’’ Had this latter clause been left out of the constitution, the government could not possibly be administered. (M'Connell vs. Weaks, 2 Ten. Rep. 219.)
This section was copied from Magna Charta, ch. 29, (2 Inst. 45,) and was the law of the land at the time of the adoption of the constitution, as the acts of 1715 and 1778 show, to the same extent it now is; yet that part of Magna Charta was within the reach of legislation, beyond which the convention placed it. The construction of this section of the great charter of the liberties of Englishmen, (and since our revolution, of all the people of the United States of America,) has, for centuries, put to rest the question, whether the courts have power to punish for contempts, and regulate their own officers, or remove them in particular cases; as will be seen, by examining the Com. of lord Coke, 2 Inst. 45; Sullivan’s Lee. 247; 1 Hum. Hist. Eng. 450; 6 Henry’s Hist. Eng. 79, 80. Hence this part of the constitution does clearly not stand in the way of the exercise of the common-law-power of removal. But it is contended, that the 14th section of the 11th article, precluded the county court from proceeding otherwise than by presentment or indictment, the defendant being criminally prosecuted. To this argument, it is a sufficient answer to say, that the proceeding to remove, was not of the criminal nature contemplated by the constitution; that a removal from office, for an indictable offence, is no bar to an indictment, conviction and punishment for the same offence. The argument proves too much, when it affects to maintain, that there must be a conviction for the extortion, before there can be a removal from office; and that the removal must be predicated upon the conviction. Now, if the removal was a punishment, in its nature criminal, the defendant would be first fined and imprisoned for extortion, and then punished a second time, for the same crime — which is contrary to *175 all law. The proceeding is in its nature civil, and collate ral to any criminal prosecution by indictment, instituted upon the same facts, as the constitution of this state, art. 4, see. 4, Brownshall's case, Cowp. 829,und the King vs. Southerland, 6 East 152, fully prove. Even had Fields been acquitted by the jury, and the court had discovered, from the facts proved upon the trial of the indictment, that he was guilty of corrupt practices, in a manner not amounting to extortion, yet I have no doubt it would have had the power to make an order of record, calling upon the accused to show cause why he should not be removed from his office; and upon due notice he might have been removed, either upon proof* by witnesses, or upon the facts appearing upon the trial of the indictment. In many matters coming before the court, it must of necessity exercise, its legal discretion ; for instance, in taxing costs, if the defendant is thought guilty, although acquitted by the jury, by the act of 1817, ch. 184, sec. 2, or in taxing the prosecutor by the act of 1813, ch. 136, sec. 3, the court judges of the facts, and gives judgment against the defendant or prosecutor, upon which a fi. fa. or ca. sa. may issue, without the privilege of the party being tried by jury; and property,'liberty and supposed privilege, are taken away by the court alone, and yet the constitution is not violated. The same may be said in the numerous cases where judgments are rendered upon motion; but all this is done by “the law of the land.”
It is further contended, that the 10th sec. of the act of 1796, ch. 7, requires, that a constable should be tried and convicted for extortion by indictment, before he is removable by the court. This is clearly not the meaning of the act, for it relates to other officers of the government; and if a judgment by motion, or upon the verdict of a jury, in a civil action for receiving fees not due, or for violating the act in any respect, was twice given against the officer, the court, *176 as a matter 'of duty, are bound to remove him, if such court the power; but if a justice of the peace, this would be evidence to the senate, upon an impeachment, which would authorize that body to remove. Many violations of the act would not be indictable, although such as to sustain a civil suit; as will be seen by the 9th and 2d sections of the act. It is believed that this act in no wise impugns the common law powers of the court, to punish its officers for corruption, that disgraces themselves and the court they serve.
It is also urged, that the county court is a tribunal of limited jurisdiction, and therefore every thing must appear upon the record that shows the correctness of the judgment of the justices who acted upon the case. The county court has as ample powers to punish its officers, as any court in the government, and is a court of very general jurisdiction in civil matters, even of more than the English court of common pleas, which has ever been ranked as one of the superior courts of the kingdom. Campbell vs. M'Iver and Lusk, 4 Haywood 60. It must appear that the party had notice, as in like cases, to show cause; and a judgment of this nature would be erroneous, (and perhaps void,) in every other court, if this fact did not appear. But the judgment of removal need only be general; and if the defendant is dissatisfied therewith, he may appeal, and have the matter retried in the circuit court; or he may file his bill of exceptions, and set forth the evidence upon which the judgment was given upon the record, and then take a writ of error. 1 Phillip's Ev. 233; Bul. N. P. 516. This is the uniform and correct practice in entering up judgments in courts of law, in cases of contempt, and others of a similar nature, within which latter class the present falls. Queen vs. Patty and others, 2 Ld. Ray 1108; 2 Atk. 489; Yeates’ case, 4 John. 367.
The defendant in this case had notice, and appeared and defended himself before the county court when suspended. The court having jurisdiction, we are bound to presume they acted correctly, and that the proceedings are according to law, unless the contrary appears. 2 Hawk. ch. 15, sec. 73 and 76; Yeates' case, 4 John. 366. The court having *177 power to remove, had power to suspend, which as certainly follows, as that the whole includes all the parts. I, therefore, think the judgment of the circuit court must he reversed, and the judgment of the county court affirmed.
This cause was argued in 1825, examined with care, and the above opinion formed and written by myself; but by reason of the absence of one of the sitting members of the court at the end of the term, no judgment was rendered in the cause at that term. Two members of the court now sitting, have, for the first time, heard the cause at this term of the court, when it was re-argued.
No reason has occurred to me, why the opinion heretofore formed, should be, in any respect, altered; but my brother judges, from the great pressure of business now before the court, have not had leisure to examine all the reasoning employed in forming that opinion; nor do they deem it incumbent on them to do so, in this particular cause; and, therefore, instruct me to say, that they concur therein, so-far as to.order, that the judgment of the circuit court be reversed, and that of the county court affirmed; which court they conceive to have been well warranted in suspending the defendant in error, Fields, from the exercise of his office of constable for Williamson county, after his conviction for extortion, and an appeal taken therefrom, until the cause of the state- against him, upon the indictment, was determined in the- court above.
The attorney for the government has asked this court, to instruct their clerk, to tax to him, in the bill of costs, a fee of five dollars, in each of the courts through which the cause has passed. Is the solicitor entitled to have his fees taxed;,? By the acts of 1801, ch. 33, sec. 2; of 1807, ch. 13, sec. 2, of the court law of 1809, sec. 19; of 1817, ch. 65, sec. 4, the solicitor is bound to attend to every matter and every prosecution, in which the state is, in any wise, interested, in every court within his district. A proceeding against a d'e-' linquent constable, to remove him from office, is as much a . matter wherein the state is interested, as a prosecution for felonyand the solicitor is as much bound to attend to it. The act of 1815, ch. 136, sec. 2, provides, “that in all pro-. *178 seditions in behalf of the state, where, by the judgment of the court, the defendant is ordered to pay costs, the attor* ney for the state shall receive the sum of five dollars, to be taxed in the bill of costs.” If the court has power to make the defendant pay the costs, then the attorney for the state is entitled to his tax fees; if not, the state and her officer, must lose the costs. In England, upon information in the nature of a quo warranto for the misuser of an office, the defendant, if convicted, always pays costs. (3 Bl. Com. 302; 4 Bl. Com. 312; 2 Strange 1149, 1213.) The courts in England tax their officers with costs, for misconduct, at discretion. (Gwyn vs. Kerly, 1 Strange 402; 1 Atk. 139; 2 Burr. 654; Barnes 47, 368, 411; 1 Com. Dig. 634.) This discretion, seemingly almost without limit, is the law of this country by our constitution, and the act of 1778; and is even increased by the acts of 1813, ch. 136, sec. 3, and of 1817, ch. 184, sec. 2; by which the courts are given the discretion to tax a prosecutor, or an acquitted defendant, with costs — even a justice of the peace is given this discretion by the act of 1817, cb. 100. Under the 74th sec. of the court law of 1794, the uniform practice of the courts has been, to tax with costs, the party against whom judgment was given. I think the powers of the court, to tax the defendant with the costs, undoubted — that the costs go with the cause, as in civil cases proceeded in by motion; and that the solicitor is entitled to his fees in the several courts, in every case “where, by the judgment of the court, the defendant is ordered to pay costs.” The fees of the county, circuit and supreme courts, must, therefore, be paid by the defendant; and the attorney for the state is, as' a matter of right, bythe act of 1794, ch. 1, sec. 74, entitled to his fee of five dollars in each court, to be taxed in the bill of costs, by the clerk of this court.
On the matter of costs, the rest of the court gave no opinion.

 Reasonable notice must be given: Feb. 12th, 1815,1 Salk. 98, pl. (4) 2 Haywood, anonymous, 73; 2 Hayw. 339; Roberts and als. vs. Beesly and wife,3 Haywood 299; Campbell vs. M'Iver, 4 Hayw. 63, 5 Hayw. 155; Cooke 360; Sevier vs. the justices of Washington county, Peck’s Rep. 343, 347; Rushton vs. Aspnall, Doug. 679; 1 Saund.33.